## NATIONAL LABOR RELATIONS BOARD v. BURKE MACH. TOOL CO.
### No. 9193.

Circuit Court of Appeals, Sixth Circuit.

Feb. 18, 1943.

Ivar Peterson, of Washington, D. C. (Robert B. Watts, Ernest A. Gross, Gerhard P. Van Arkel, Morris P. Glushien, Louis Libbin, and Thomas E. Shroyer, all of Washington, D. C., on the brief), for petitioner.

Harry E. Smoyer, of Cleveland, Ohio (Smith & Kauffman, of Conneaut, Ohio, and Stanley & Smoyer, of Cleveland, Ohio, on the brief), for respondent.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This is a petition for enforcement of an order based upon findings that respondent violated § 8(1) and § 8(5) of the National Labor Relations Act, Title 29 U.S. C., § 158(1) and § 158(5), 29 U.S.C.A. § 158(1, 5). The respondent admits that it violated § 8(1) of the Act during a three-day period, but contends that after violations extending concededly for less than two weeks, voluntarily and before issuance of any complaint by the Board, it did all that the Board could then have properly ordered it to do and that it is not rightfully subject to the order for past violations of the Act, since there is no evidence of any threat or intent of repetition.

Respondent is a machine tool company doing business at Conneaut, Ohio, of which Rockwell was president and general manager. It employed at the time in controversy 49 men, exclusive of clerical and supervisory employees. On January 20 and 21, 1941, union meetings were held at the home of one of the employees where 28 men signed application cards for membership in the International Association of Machinists, hereinafter called the union. Having learned of the meetings, Rockwell announced on January 22 that employees who signed union applications would receive no overtime and hence no time-and-a-half compensation. Under the customary

schedule of operations the men would have worked until six P. M., entitling them to a credit of two hours' overtime for the day, but in accordance with Rockwell's order, 25 of the men who had signed application cards ceased working at four o'clock. Shortly thereafter, at the request of a number of the employees, Nobozny, an organizer of the union, interviewed Rockwell at the plant. Nobozny opened the conversation with the statement that he represented the union and a majority of the employees, and wished to protest against the fact that union men were not permitted to work overtime. This was the first time that Rockwell had ever seen Nobozny, and the interview was extremely acrimonious, concluding with the statement by Rockwell that he would throw Nobozny out, and by Nobozny that he would come back again. Rockwell thereafter disparaged the union and Nobozny, and suggested and sponsored the formation of a company union, to which 30 of the employees applied for membership. Being advised a few days later that this action was a violation of the statute, respondent on February 5, 1941, posted throughout its plant a notice stating its desire to fully comply with the Act, its intention not to discourage any labor organization, including the union in question, and its resolution not to deal with the company union in process of formation, and concluding that it would bargain collectively "with any labor organization that is not violative of the National Labor Relations Act, including the International Association of Machinists, providing that said organization is duly chosen as their representative by a majority of our employees in an appropriate bargaining unit under the procedure prescribed by the National Labor Relations Act."

■ Both the examiner and the Board found that the respondent refused to bargain, and hence violated § 8(5) upon January 22, when the interview with Nobozny was held. The record contains no evidence supporting this finding of fact. Nobozny admits that he did not ask Rockwell to bargain with the union nor bring any contract with him. In fact he stated that Rockwell was in no mood to bargain. The Board considered that respondent was not in a position to maintain that there was no request to bargain because of Rockwell's conduct during the interview and his other anti-union activities. We cannot agree that the quick-tempered reaction of an employer, however unfortunate, to a man whom he had never seen before, who was accompanied by none of his employees and who failed to propose a conference or produce evidence that he represented a majority of the employees, under the statute dispenses with the necessity for a specific request to bargain. Nobozny in effect recognized the fact that he had made no request to bargain by his statement that he would come again.

■ However, the record substantially supports the finding that respondent's action at the meeting of February 6, in which the respondent stated that it would bargain, but conditioned its assent on the holding of an election, constituted a violation of § 8 (5). The Board found that this refusal followed the employer's efforts to induce its employees to join the inside organization, its disparagement of the union, and its violation of § 8(1). Giving full effect to the stipulation relied on by the respondent, and noting that its contention is correct that according to the time cards only 21 of the men rang out at four o'clock on January 22 and that four of those who had signed applications for membership in the union were paid for a half-hour's additional time, there was also evidence that these four men had ceased working at four o'clock and were delayed in leaving the plant only because of a conversation with Rockwell in which he sought to induce them to leave the union. Moreover, in the light of their signatures to the application cards, the fact that these men left so soon after four o'clock supports the Board's finding that these employees left early because they still aligned themselves with the union and because Rockwell forbade union men to work overtime. Hence we cannot say that there is no substantial support for the conclusion that on January 22 a majority of the employees of the plant desired to be represented by the union, and that Rockwell's later contention that no majority existed on February 6 was based on his knowledge of his own successful efforts in illegally detaching certain men from the original group. For the same reason the fact that only about 19 men participated in a strike in protest against respondent's refusal to bargain with the union is immaterial on the question of majority representation on February 6th, for the strike did not commence until March 3, 1941.

■ The Board denied a motion by the respondent seeking leave to adduce ad-

ditional evidence to show that various strikers did not apply for reinstatement after the strike was officially terminated by the union, that some eight of its employees were working in other plants at substantially higher rates of pay and that others had demonstrated their unwillingness to resume or continue their employment with respondent. Obviously this evidence could not have been material on the question of majority representation at the time of the refusal to bargain on February 6. The respondent urges, however, that the additional evidence would show that the Board's order that it bargain with the union as the exclusive representative of its employees is erroneous because it requires bargaining with a union which represents only a small minority. In the alternative it is claimed that a similar motion to adduce additional evidence should be sustained by this court. We disagree with both contentions. The Board concluded that respondent's unfair labor practices had caused and prolonged the strike, that an order requiring respondent to bargain with the union as the exclusive representative of its employees was necessary to remedy the effects of the unfair labor practices and that the additional facts were immaterial to the issues raised by the complaint. Assuming loss of majority representation, the Board was entitled to conclude as it fairly appears to have done (Cf. Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217) that such loss could not be separated from the unfair labor practices and that the effect of the refusal to bargain should be remedied by affording the employees an opportunity to restore the status quo. International Ass'n of Machinists v. National Labor Relations Board, 311 U.S. 72, 82, 61 S.Ct. 83, 85 L.Ed. 50; National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 339, 340, 60 S.Ct. 918, 84 L. Ed. 1226.

Respondent endeavors to support its contention that the employer is not rightfully subject to an order for past violations of the Act on the ground that the jurisdiction of this court is equitable in nature, and that courts do not issue injunctions against practices voluntarily abandoned, in the absence of authority or evidence of intent of repetition. Threat of repetition growing out of the hostile statements made by Rockwell in May, long after these events, concerning the president of the local union and concerning Nobozny, is found to exist. Moreover, this case arises under a specific statute which defines the power of the Board in this respect in terms much broader than the principle which petitioner would have us apply. Section 10(c), of the Act 29 U.S.C.A. § 160 (c) provides that "if upon all the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall * * * issue * * * an order requiring such person to cease and desist from such unfair labor practice * * *." The Board is empowered, therefore, to issue such an order in a case in which the person has engaged in and has voluntarily ceased the unfair labor practice. National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 600, 61 S.Ct. 358, 85 L.Ed. 368; Consumers Power Co. v. National Labor Relations Board, 6 Cir., 113 F.2d 38, 44.

The breadth of the Board's power emphasizes the importance of striving for that atmosphere of perfect impartiality which is so much to be desired in any hearing to settle controversial issues. Rulings as to the reception of evidence and the general conduct of hearings should not only keep within the bounds of the broad discretion necessarily imposed upon the trial examiner but also reflect an endeavor to impress the employer, as well as the employes, that every reasonable effort has been made to enable all parties to present their theory of what has transpired. In the present case, the respondent seasonably moved for a separation of witnesses as soon as it appeared that the testimony of witnesses called by the Board would be inconsistent with that of Rockwell. This motion was denied and testimony of various employees who had listened to similar testimony given by others was received over respondent's objection. These rulings undoubtedly hampered effective cross-examination of the Board's witnesses by the respondent. Since the testimony presented a serious conflict on several material points, the effect of the course adopted upon public confidence in the fairness of the proceedings was unfortunate. While we think the rulings did not constitute such an abuse of discretion as to require denial of the petition for enforcement of the order, the refusal to separate witnesses was nonetheless improvident.

The record clearly establishes that before the issuance of the complaint

all employees were fully compensated for all possible claim arising out of the controversy over the overtime, and that no employee's application for reinstatement has been refused. Within a very short time after the commencement of the strike the respondent notified all of its employees by letters mailed to their homes that it considered that the strikers did not lose their status as employees simply because they were on strike and that it had no desire to punish any one because he was a striker. The order of the Board should recognize this situation. The Board also concedes that its order should be modified so as not to give strikers preference over those employed prior to the strike who continued to work thereafter.

The third sentence of the third paragraph of the remedy, section V of the decision and order of the Board, is modified in accordance with the request of the Board to read as follows:

"If thereupon, despite such reduction in force, there is not sufficient employment available for the employees to be offered reinstatement, all available positions shall be distributed among such employees and the remaining employees. * * *"

Paragraph 2(b) of the order of the Board is modified by inserting in the third line thereof, after the word "reinstatement," the words "if there be any such employees."

As so modified, the order is affirmed.