## NATIONAL LABOR RELATIONS BOARD v. PORCELAIN STEELS, Inc.

### No. 9512.

Circuit Court of Appeals, Sixth Circuit.
Nov. 30, 1943.

Howard Lichtenstein, of Washington, D. C. (Robert B. Watts, Ernest A. Gross, Howard Lichtenstein, Frank Donner, and Irene R. Shriber, all of Washington, D. C., on the brief), for petitioner.

Paul J. Bickel, of Cleveland, Ohio (Squire, Sanders & Dempsey, Paul J. Bickel, and Roy C. Green, all of Cleveland, Ohio, on the brief), for respondent.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The National Labor Relations Board found on substantial evidence that the respondent Porcelain Steels, Inc., had been guilty of unfair labor practices and, in an order entered January 20, 1943, directed the company to cease and desist from such practices; from giving effect to a contract entered into on December 1, 1941, with the Porcelain Employees' Association, which respondent had fostered and dominated; and from discouraging membership in or refusing to bargain collectively with the International Association of Machinists, District 54 (A. F. of L.). The Board further ordered the respondent to reinstate with back pay two discharged employees; to withdraw recognition from and completely disestablish the Porcelain Employees' Association and, upon request, to bargain collectively with the International Union as the exclusive representative of the company's production and maintenance employees, except those engaged in clerical and supervisory work; and to post appropriate notices.

In opposing the petition to this court for enforcement of the Labor Board's order, respondent says that International Association of Machinists, District 54 (hereinafter referred to as the Union), having lost its majority representation prior to the hearing before the Examiner in July 1942, and having practically no adherents at this time, is not in fact the bargaining representative of respondent's employees; that the failure of the company to recognize the Union as bargaining agent of its employees some two years ago has no bearing now; and that respondent should be permitted to adduce additional evidence probative of the fact that the Union is not the authorized agent of the present employees of the company.

The intermediate report of the Trial Examiner, which was adopted by the National Labor Relations Board, set forth that on November 17, 1941, the Union submitted to regional officers of the Labor Board cards, signed by 33 of the total number of 43 to 46 employees of the respondent, designating the Union as their collective bargaining agent. The Union's majority was found further corroborated by the circumstance that in early November 35 or 40 employees wore union buttons around the plant. Certain revocations of designations of the Union as collective bargaining agent were found to have followed the unfair labor practices of respondent, and were therefore disregarded by the Examiner and the Board in computing the Union's majority. The loss of that majority was found upon substantial evidence to have occurred after conception and execution by respondent of a systematic plan of unfair labor practices. Instead of checking the union designation cards against its payroll, as had been requested by the Union, the company

undermined the Union's majority by encouraging and contributing to the organization of the company-dominated Association. The action of respondent in signing a collective bargaining contract with the Association to be effective December 1, 1941, was deemed by both the Trial Examiner and the Labor Board "a refusal to bargain with the Union." The Association did not come into being until employees began to wear Union buttons and until the Union representative had requested recognition. This, coupled with the superintendent's hostility to the Union, his manifest favoritism toward the Association, the company's sponsorship of the Association meeting held in the plant during working hours, and the hasty recognition accorded the Association by the company, evidenced in the immediate signing of a contract with it granting wage increases which the superintendent had promised, led the Trial Examiner and the Board to conclude that the Association was "the creature of the respondent." The Examiner and the Board inferred that, except for the unfair labor practices of the respondent, the Union "would have been able to recruit from among the new employees a sufficient number to maintain its majority."

A direct finding upon substantial evidence was made by the Labor Board that on November 3, 1941, a majority of the employees of the respondent had designated the Union as bargaining representative; and the conclusion was drawn that, pursuant to Section 9(a) of the National Labor Relations Act, 29 U.S.C.A. § 159(a), the Union had been since that date and was at the time of the decision exclusive bargaining agent of the employees of the respondent in its production and maintenance unit.

In these circumstances, the contentions of the respondent are in direct contravention of adjudications of the Supreme Court.

In National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 339, 340, 60 S.Ct. 918, 84 L.Ed. 1226, the Supreme Court held that, where the National Labor Relations Board had found upon substantial evidence that a shift of majority membership from one union to another was effectuated by unfair labor practices of an employer in persuading and coercing its employees to join the latter union, which had been organized and fostered by the company, the Board was justified in finding that the first union continued to be the exclusive representative of all the employees for the purposes of collective bargaining.

It was declared in International Ass'n of Machinists v. National Labor Relations Board, 311 U.S. 72, 82, 61 S.Ct. 83, 89, 85 L.Ed. 50, that it is for the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged. The court said: "It cannot be assumed that an unremedied refusal of an employer to bargain collectively with an appropriate labor organization has no effect on the development of collective bargaining. See National Labor Relations Board v. Pacific Greyhound Lines, 303 U.S. 272, 275, 58 S.Ct. 577, 578, 82 L.Ed. 838. Nor is the conclusion unjustified that unless the effect of the unfair labor practices is completely dissipated, the employees might still be subject to improper restraints and not have the complete freedom of choice which the Act contemplates. Hence the failure of the Board to recognize petitioner's notice of change was wholly proper. National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 339, 340, 60 S.Ct. 918, 929, 84 L.Ed. 1226."

Election methods considered "suitable" by the courts are not to be substituted by them, for the reason that the National Labor Relations Act vests power in the Labor Board, not in the courts, to select the method of determining what union, if any, employees desire as their bargaining agent. National Labor Relations Board v. Falk Corporation, 308 U.S. 453, 458, 60 S.Ct. 307, 84 L.Ed. 396.

In National Labor Relations Board v. P. Lorillard Company, 6 Cir., 117 F.2d 921, 926, where lapse of time and changed conditions demonstrated a shift in sentiment of employees with respect to their choice of a collective bargaining agency, this court enforced but modified the Board's order so as to require the conduct of a new election. This decision was reversed by the Supreme Court in a per curiam opinion, 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380, in which it was said: "The Board had considered the effect of a possible shift in membership, alleged to have occurred subsequent to Lorillard's unfair labor practice. But it had reached the conclusion that in order to effectuate the policies of the Act, Lorillard must remedy the effect of its prior unlawful refusal to bargain by bargaining with the union shown to have had a majority on the date of Lorillard's refusal to bargain. This was for the

Board to determine, and the court below was in error in modifying the Board's order in this respect."

The Lorillard case rejects the concept of respondent concerning the function and power of the Circuit Court of Appeals in the field of Labor Board review. See National Labor Relations Board v. Clinton E. Hobbs Co., 1 Cir., 132 F.2d 249, 252; National Labor Relations Board v. Medo Photo Supply Corporation, 2 Cir., 135 F.2d 279, 281.

This court, in National Labor Relations Board v. Swift & Co., 6 Cir., 127 F.2d 30, 32, upon the authority of the Lorillard case, denied the contention that an order directed to an employer to bargain collectively with a labor organization chosen by employees should be contingent upon another election.

In National Labor Relations Board v. Burke Mach. Tool Co., 6 Cir., 133 F.2d 618, 621, we recognized that the Labor Board was privileged to infer that a loss of majority representation by a bargaining agency was inseparable from unfair labor practices of the employer. Cf. National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 640; Bussmann Mfg. Co. v. National Labor Relations Board, 8 Cir., 111 F.2d 783, 788; Oughton v. National Labor Relations Board, 3 Cir., 118 F.2d 486.

The petition of the National Labor Relations Board for enforcement of its order is allowed, without modification.