## GREAT SOUTHERN TRUCKING CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 4874.

Circuit Court of Appeals, Fourth Circuit.

Jan. 10, 1944.

Winthrop A. Johns and A. Norman Somers, Attys., both of Washington, D. C. (Robert B. Watts, Gen. Counsel, and Howard Lichtenstein, Asst. Gen. Counsel, both of Washington, D. C., on the brief), for National Labor Relations Board.

Whiteford S. Blakeney, of Charlotte, N. C. (Guthrie, Pierce & Blakeney, of Charlotte, N. C., on the brief), for Great Southern Trucking Co. and L. A. Raulerson.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a petition by the National Labor Relations Board (hereinafter called the Board) for an order adjudging the Great Southern Trucking Company (hereinafter called the Company) and L. A. Raulerson, its President, in contempt of the decree of this court entered on April 13, 1942, enforcing an order of the Board. Mandate was issued on May 14, 1942, 127 F.2d 180, and on October 12, 1942, the Supreme Court denied the application of the Company for a writ of certiorari. 317 U.S. 652, 63 S.Ct. 48. Our decree has at all times remained in full force and effect and both the Company and Raulerson have had knowledge of the decree since its entry.

The Board in its petition alleges that the Company and Raulerson have disobeyed paragraphs 1(b) and 2(a) of our decree by failing and refusing to bargain collectively with The International Brotherhood of Teamsters, Chauffeurs, Stablemen, and

Helpers of America, Local No. 71 (hereinafter called the Union), as the duly designated collective bargaining agent for the employees of the Company, although the Company and Raulerson have been repeatedly requested by the Union to do so. The Company and Raulerson frankly admit that they have refused to bargain with the Union as ordered. They seek to extricate themselves from the plight of their own wrongdoing, however, on the ground that the Union has lost its majority status inasmuch as after the entry of our decree, a petition was signed by a majority of the employees stating that they did not desire to be represented by the Union.

On March 3, 1943, these circumstances were presented by the Company to the Board with a request that the Board redetermine the Union's majority status. The Board denied this request apparently on the ground that the Company had at no time since the entry of our decree bargained with the Union and that the effects of the Company's unfair labor practices had therefore never been dissipated. Accordingly, the Board's Director of Field Division informed the Company that it expected full compliance with our decree, including the bargaining provision. We are thus squarely presented with the question of whether the loss of the Union's majority status, occurring after the entry of our decree but prior to the taking of remedial action by the Company as required by our decree, relieves the Company from the obligation of complying with the bargaining provisions of the decree.

■ We have already had occasion to consider this question in National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 1940, 110 F.2d 632, and we there rejected the contention that an intervening loss of a majority status relieves an employer of the remedial obligation to bargain with a union with which it had previously unlawfully refused to bargain. Judge Parker there stated, 110 F.2d at page 640: "It is reasonable to assume, moreover, that any decline in union membership has been due in large measure to refusal of respondent to bargain with the union as representative of the employees in the manner contemplated by the Act of Congress; and, in such situation, an order requiring respondent to bargain as contemplated by the Act is reasonably necessary to overcome the effect of the interference with self organization resulting from the refusal to bargain. An employer should not be allowed to discredit a bargaining agent selected by an overwhelming majority of his employees by refusal to bargain with it and then take advantage of the loss of membership due to his wrongful act as an excuse for refusing to recognize it as a bargaining agent."

Moreover, in a subsequent order dated March 11, 1941, we adjudged the Highland Park Company in contempt when it attempted to urge this same argument as a defense for its failure to obey our decree. And a wealth of judicial utterance in the form of decisions and dicta by the Supreme Court and each of the Circuit Courts of Appeals sustains our position in this respect. N.L.R.B. v. P. Lorillard Co., 1942, 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; International Ass'n of Machinists v. N.L.R.B., 1940, 311 U.S. 72, 61 S.Ct. 83, 85 L. Ed. 50; N.L.R.B. v. Bradford Dyeing Ass'n, 1940, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; cf. N.L.R.B. v. Clinton E. Hobbs Co., 1 Cir., 1942, 132 F.2d 249; N. L.R.B. v. Medo Photo Supply Corp., 2 Cir., 1943, 135 F.2d 279; Oughton v. N.L.R.B., 3 Cir., 1941, 118 F.2d 486; N.L.R.B. v. Whittier Mills Co., 5 Cir., 1940, 111 F.2d 474; N.L.R.B. v. Burke Machine Tool Co., 6 Cir., 1943, 133 F.2d 618; N.L.R.B. v. Chicago Apparatus Co., 7 Cir., 1940, 116 F.2d 753; Bussmann Mfg. Co. v. N.L.R.B., 8 Cir., 1940, 111 F.2d 783; N.L.R.B. v. Biles Coleman Lumber Co., 9 Cir., 1938, 96 F.2d 197; Continental Oil Co. v. N.L. R.B., 10 Cir., 1940, 113 F.2d 473; N.L.R.B. v. Porcelain Steels, 6 Cir., 1943, 138 F.2d 840, decided Nov. 30, 1943.

■ While it is true that the loss of majority in the instant case occurred, not among the employees composing the original working force of the Company, but rather among the changed personnel composed largely of new employees who replaced the discharged employees, the principle that the union is entitled to a reasonable presumption of the continuity of its majority status and an employer may not profit by its own wrongdoing is nonetheless applicable.

The failure of the Company to take the curative action dictated by us necessarily must have had a telling impact on the new employees. Indeed, had the Company acted lawfully and obeyed the command of

our decree by recognizing and bargaining with the Union, the Union probably would have recruited in its ranks a proportionate share of adherents from the new employees. As was stated in N.L.R.B. v. Franks Bros. Co., 1 Cir., 1943, 137 F.2d 989, 994: "It appears in the case before us that the loss of a majority was due to a voluntary quitting on the part of certain employees of respondent. * * * The respondent's dilatory tactics, its refusal to recognize the union as a bargaining representative, and its campaign against the union deprived it of the opportunity of strengthening its organization. It demonstrated the union's inability to reach an agreement with the employer with the result that as time went on the enthusiasm of its members waned and it made it more difficult for the union to capture the allegiance of other employees, either old employees who had previously not joined, or new employees who came on after the unfair labor practices were committed. *The Board might reasonably conclude that had the union been recognized and installed as bargaining representative of the employees, as the law required, it probably would have retained its majority status by accessions from these sources, despite its loss of members resulting from normal labor turnover.* In other words, the Board has taken the position that in a proceeding of this nature involving a violation of Section 8(5), it is imperative in order to effectuate the purposes of the Act, that an employer gain no advantage from his dilatory tactics in refusing to bargain collectively with a majority union. The fact that it may be shown that by lapse of time the union had been unable to retain its majority is not a sufficient basis for refusing to order affirmatively that the respondent bargain with the union." (Emphasis supplied.)

Inasmuch as the Company's own unlawful conduct created an atmosphere which made normal union growth and allegiance difficult, it will not now be permitted to urge its labor turnover and ensuing loss of union majority status as the basis for avoiding compliance with the remedial bargaining provision of our decree. This is particularly true in the instant case where the Company had a black record of active and insidious anti-union conduct since 1938. In our decision enforcing the Board's order (127 F.2d 180) we outlined the obstructive and Fabian tactics of the Company which rendered abortive the statutory rights of its employees to collective bargaining by representatives of their own free choice. Apparently the Company's unlawful labor practices have continued unabated since then. Under these circumstances it can hardly be said that this latest petition of a majority of the employees disavowing the Union is a true expression of their unhampered will. On the contrary, it rather indicates that at long last, after five years, the Company has been able successfully to thwart the employees' attempt to bargain collectively through the representatives of their own untrammelled choice.

Accordingly, to accept on its face value the Company's contention that "it is clear and definite that the Union here in question does not any longer represent the majority" would be naive and unwarranted. If the employees do now affirmatively oppose the Company's bargaining with the Union for a contract affecting them, it is only because the Company, in violation of our decree, has continued its policy of unlawful antagonism to the Union. N.L.R.B. v. Bradford Dyeing Ass'n, 1940, 310 U.S. 318, 340, 60 S.Ct. 918, 84 L.Ed. 1226.

We are thus unable to separate the alleged loss of majority representation by the Union from the proven unfair labor practices of the Company, N.L.R.B. v. Burke Machine Tool Co., 6 Cir., 1943, 133 F.2d 618. The Supreme Court's decision in the Lorillard case is therefore binding on us for the court there stated, 314 U.S. at page 513, 62 S.Ct. at page 397, 86 L. Ed. 380: "The Board had considered the effect of a possible shift in membership, alleged to have occurred subsequent to Lorillard's unfair labor practice. *But it had reached the conclusion that in order to effectuate the policies of the Act, Lorillard must remedy the effect of its prior unlawful refusal to bargain by bargaining with the union shown to have had a majority on the date of Lorillard's refusal to bargain. This was for the Board to determine, and the court below was in error in modifying the Board's order in this respect.* National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 339, 340, 60 S.Ct. 918, 929, 84 L.Ed. 1226; International Association of M., T. and D. M. L. v. [National] Labor [Relations] Board, 311 U.S. 72, 82, 61 S.Ct. 83, 85 L. Ed. 50." (Italics ours.)

██ In conclusion, we wish to clarify our position by stating that we do not mean to infer the existence of a pre-conceived policy on our part to the effect that our decree grants to the Union a permanent status as duly authorized and exclusive bargaining agent for any fixed period of time. *After the conditions of free choice have been restored by collective bargaining, in good faith on the part of the Company,* then should these employees desire to be represented by some body other than the Union, they may then avail themselves of the statutory procedure of the Act itself (Section 9(c), 29 U.S.C.A. § 159(c) in order to guarantee that their genuine desires can be ascertained and respected. But until the Company purges itself of its unlawful conduct in violating our decree, the employees' true desires "are matters of speculation and argument." N.L.R.B. v. Brown Paper Mill Co., 5 Cir., 1940, 108 F.2d 867, 872, certiorari denied 1940, 310 U.S. 651, 60 S.Ct. 1104, 84 L.Ed. 1416.

 In any event, the mere fact that the Union may have lost its majority status since the Company refused to bargain does not authorize us to direct a new election. N.L.R.B. v. Medo Photo Supply Corp., 2 Cir., 1943, 135 F.2d 279. This was a matter for the Board properly to determine and we see no reason for disturbing its action adverse to the Company. N.L.R.B. v. P. Lorillard Co., 1942, 314 U.S. 512, 513, 62 S.Ct. 397, 86 L.Ed. 380. It would have been a perversion of the underlying policy of the Wagner Act for the Board to have granted the Company's request for a redetermination of the Union's majority status when the Company admittedly had not as yet complied with our decree and when the effects of the Company's unfair labor practices had not as yet been dissipated. Oughton v. N.L.R.B., 3 Cir., 1941, 118 F.2d 486.

An order adjudging the Company and Raulerson in contempt should therefore issue.

SOPER, Circuit Judge (dissenting).

The petition of the Great Southern Trucking Company, filed with the Labor Board on March 3, 1943, contained a request not unreasonable on its face, that the Board redetermine the wishes of the company's employees with respect to their bargaining representative. The company had complied with the mandate of this court of May 14, 1942 (Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 127 F.2d 180), in all respects but one. It had posted the required notice; it had offered to each of 40 union employees, whose rights were determined by the prior decision, reinstatement and had paid them back wages in the sum of $15,641.03; but only 7 of them accepted the offer of reinstatement and these 7, for good and lawful reasons, have since left, so that none of the 40 was in the company's employ when the petition for redetermination was filed.

The 40 men constituted a majority of the bargaining unit at the plant and hence it seemed to the body of employees who remained that the union was no longer entitled to speak for them. Consequently 53 of them filed a petition with the Board on January 22, 1943 in which they stated that they did not wish the union to represent them and asked the Board to give them an opportunity to indicate their preference in an election.

This circumstance caused the company to doubt whether it should bargain with·the union, for such action would seem to deny to the men the right accorded to them by the statute to choose their bargaining agent. Accordingly, on February 9, 1943, when for the first time nine months after the issuance of the mandate of this court the union offered to bargain, the company declined. It was the company's right, since it was in doubt, to ask the Labor Board for guidance because § 9 of the statute confides to that body the power and duty in case of controversy to certify the selected bargaining agent of employees. The Board, however, refused its assistance. It summarily dismissed the petition by an order of March 20, 1943, without holding a hearing or making findings of fact or filing an opinion. On April 19, 1943, the attorney of the company, by letter addressed to the clerk of this court, sought information as to the propriety of applying to the court for a declaratory judgment defining its rights and duties in the premises, but the answer of the clerk gave no encouragement to this suggestion. Finally, the petition of the Board in the contempt proceeding was filed on September 27, 1943.

These statements of fact are necessarily taken from the pleadings in the case, for the court took no testimony; but the allegations are not in dispute and they do not

seem to justify the stigma of intentional wrongdoing or defiance of the court, but rather a bona fide search on the part of the company for guidance in a difficult situation. It is significant that the Board itself asks no punitive action at this time but merely requires an order again directing the company to obey the court's mandate.

The adjudication of contempt that has been announced is predicated upon the statement that the Board denied the company's request for redetermination on the ground that the company had at no time since the entry of our decree bargained with the union and that the effects of the company's unfair labor practices had therefore never been dissipated. There is no justification in the record for this statement. The Board gave no reasons and stated no grounds for the dismissal of the company's petition; nor is the loss of union support a necessary consequence in every case of failure on the part of the employer to bargain with a union. So far as we know, the decision of the Board may have been issued in accordance with its general attitude that its certification of a bargaining representative must be respected until the Board withdraws it. Such a certification is not reviewable by the court unless the court is asked to enforce an order of the Board based thereon, whereupon it becomes proper to inquire whether the Board's action has been arbitrary or capricious. Pittsburg Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, affirmed 313 U.S. 146, 152, 61 S.Ct. 908, 85 L.Ed. 1251; American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; National Labor Relations Board v. Botany Worsted Mills, 3 Cir., 133 F.2d 876.

This rule should be applied not only in enforcement cases but also in contempt proceedings when a petition for redetermination, based upon an alleged change of conditions subsequent to the court's mandate, is filed with the Board. The court has no power to ascertain bargaining agents for the workers, but the Board has the power and should not arbitrarily refuse to exercise it when a proper showing is made. In the present instance, a prima facie case is alleged. It is conceivable, of course, that the union's lack of majority is due to the previous wrongdoing of the company; but, on the other hand, it is not improbable that the union's lack is due to the voluntary absence of active union members, and that the present employees, although fully conscious through the prior proceedings in this case that their right to join the union will be protected by the Board and by this court, sincerely and spontaneously prefer to have no union at all. To resolve this question the Board should be required to make findings of fact which will serve as a guide to the court and enable it to act with certainty rather than upon conjecture in reaching its conclusions upon the petition for contempt.

The proper action for the court to take under the circumstances is to remand the case to the Board to find the facts. Such was the procedure taken by the court in an analogous situation in National Labor Relations Board v. Karp Metal Products Co., 2 Cir., 134 F.2d 954, where an order of the Board of July 8, 1942, was based on a finding that on June 3, 1941, the union represented a majority of employees and a petition for redetermination was filed ten months later, alleging that the union had lost its majority. The Board refused to consider the petition and the court issued an order enforcing all of the provisions of the Board's order except that directing the company to bargain with the union, and as to this remanded the case to the Board to ascertain whether the union represented a majority at the time of the Board's hearing. The court said: "It is not our province to decide how far the respondent's earlier unfair trade practices continue to vitiate any choice of a representative by its employees; that is for the Board. Nevertheless, the respondent is entitled to the Board's judgment on that issue and on this record it has been refused any hearing whatever."