NATIONAL LABOR RELATIONS BOARD v. CENTURY OXFORD MFG. CORPORATION.

No. 208.

Circuit Court of Appeals, Second Circuit.

Feb. 15, 1944.

542

A. Norman Somers, of Washington, D. C. (Robert B. Watts, Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, and Jacob I. Karro and Margaret Farmer, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for the Board.

John L. Backer, of New York City, for the respondent.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

PER CURIAM.

The only important question in this case arises upon these facts. The Board conducted an election of the respondent's employees on November 19, 1941, and a union, affiliated with the C. I. O., was elected by a vote of sixty to nineteen, as the representative of the appropriate bargaining unit: i.e. all the "production" employees. The regional director certified the results of this election to the Board on the 22nd; and the respondent began negotiations with the union. While these were in progress, several employees circulated a petition at the end of December, purporting to repudiate the union as their bargaining representative, which, after it had been signed by the employees almost unanimously, was presented to the respondent's general manager. He refused to accept it, and early in January the employees started to organize a committee of their own to act as their representative. After this had been completed the respondent refused to continue bargaining with the union on the ground that it no longer represented a majority of the employees, and made a contract with the committee as their accredited representative. The Board found that the respondent had "dominated and interfered with the formation and administration of the Committee and contributed financial and other support thereto," and forbade it to treat the committee as the employees' representative. As there was substantial support for this finding in the record, the order was, so far, plainly within the Board's powers. The examiner also found that the respondent had refused to bargain with the union before the majority of the employees, by the petition signed at the end of December, repudiated it as their representative. The Board thought, however, that the evidence did not support this finding; but it found that it was an unfair labor practice for the respondent to refuse to deal with the union after the employees had organized the committee, and it ordered the respondent to continue to treat the union as the bargaining representative. Thus arises the question whether the employees, having elected the union as their bargaining representative on November 19th, could disestablish it early in January by the petition we have mentioned.

The purpose of the act is to insure collective representation for employees, and to that end § 9 gives power to the Board to supervise elections and certify the winners as the authorized representatives. Inherent in any successful administration of such a system is some measure of permanence in the results: freedom to choose a representative does not imply freedom to turn him out of office with the next breath. As in the case of choosing a political representative, the justification for the franchise is some degree of sobriety and responsibility in its exercise. Unless the Board has power to hold the employees to their choice for a season, it must keep ordering new elections at the whim of any volatile caprice; for an elec-

tion, conducted under proper safeguards, provides the most reliable means of ascertaining the deliberate will of the employees. How long the employees' undoubted power to recall an elected representative may be suspended, is a matter primarily, perhaps finally, for the Board; but a period of six weeks is on any theory not the limit. When they elected the union, the employees committed themselves to it as their representative for a longer period, unless the Board in its discretion saw fit to intervene because an extraordinary situation presented itself which demanded extraordinary measures. National Labor Relations Board v. Appalachian Electric Power Company, 4 Cir., 140 F.2d 217.

■ The respondent makes the further point that so much time has now elapsed since the election of November 19, 1941, that a new election should be held, regardless of the validity of the recall by the petition. Even if that would have been true had nothing happened meanwhile, the advent of the committee, dominated by the respondent, as a substituted bargaining agent, added a new feature to the situation. The Board alone can decide when employees, who have been acting through a dominated or fostered representative, have so far shaken off the effect of so doing as to be able to exercise a free choice. This is such a situation and the point in one form or another has been so often decided that we may content ourselves with merely referring to our own last decision. National Labor Relations Board v. Standard Oil Co., 2 Cir., 138 F.2d 885.

An enforcement order will issue.