**NATIONAL LABOR RELATIONS BOARD
v. INTER–CITY ADVERTISING
CO., Inc.
No. 5440.**

Circuit Court of Appeals, Fourth Circuit.

March 15, 1946.

Millard Cass, Atty., N. L. R. B., of Washington, D. C. (David A. Morse, Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Ida Klaus and Reginald Parker, Attys., N. L. R. B., all of Washington, D. C., on the brief), for petitioner.

Whiteford S. Blakeney, of Charlotte, N. C. (Guthrie, Pierce & Blakeney, of Charlotte, N. C., on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and GILLIAM, District Judge.

SOPER, Circuit Judge.

This court has consistently upheld the National Labor Relations Board in its position that an employer must continue to bargain with the union certified by the Board to represent the majority of his employees, even after the union majority has been lost, whenever there is reason to believe that the change was caused by a refusal of the employer to bargain or by other unfair labor practices on his part. National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632; Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 127 F.2d 180; Id., 4 Cir., 139 F.2d 984; National Labor Relations Board v. Appalachian Electric Power Co., 4 Cir., 140 F.2d 217. In a more recent case, Franks Bros. Co. v. Labor Board, 321 U.S. 702, 704, 64 S.Ct. 817, 818, 88 L.Ed. 1020

the Supreme Court has pointed out that it is for the Board to determine how the effect of unfair labor practices can best be expunged and has stated the reason for the attitude of the Board in the following terms:

"* * * Out of its wide experience, the Board many times has expressed the view that the unlawful refusal of an employer to bargain collectively with its employees' chosen representatives disrupts the employees' morale, deters their organizational activities, and discourages their membership in unions. The Board's study of this problem has led it to conclude that, for these reasons, a requirement that union membership be kept intact during delays incident to hearings would result in permitting employers to profit from their own wrongful refusal to bargain. See, e. g., Matter of Inland Steel Co., 9 N.L.R.B. 783, 815, 816; Matter of P. Lorillard Co., 16 N.L.R.B. 684, 699–701. One of the chief responsibilities of the Board is to direct such action as will dissipate the unwholesome effects of violations of the Act. See 29 U.S.C. § 160(a) and (c), 29 U.S.C.A. § 160(a, c). And, 'it is for the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged.' International Association of Machinists v. Labor Board, 311 U.S. 72, 82, 61 S.Ct. 83, 89, 85 L.Ed. 50."

In the pending case we are asked to go a step further and to hold that the employer must bargain with a union which has lost its majority, where the change has not been occasioned by the refusal of the employer to bargain or by any other illegal practice on his part. The Board expressly adopted the findings and conclusion of the trial examiner who ruled that there was no evidence in the case to show "* * * that the respondent has interfered with, restrained, and coerced its employees: by discussing and settling grievances with its employees without the participation of the Union; by refusing to discuss grievances with the Union as the exclusive representative of its employees within the appropriate unit; by bargaining directly and individually with the employees on rates of pay and wages and refusing to discuss rates of pay and wages with the Union. No evidence was adduced to substantiate these allegations of the complaint. It will therefore be recommended that so much of the complaint as specifically concerns these allegations be dismissed."

The extremity of the Board's position is emphasized by the fact that the union membership has been reduced by normal and lawful changes in personnel of the employees to a single employee. Nevertheless the Board holds that although the "Union may not presently represent a majority of the employees in the unit, we find, as did the trial examiner, that in order to effectuate the policies of the Act the respondent must be ordered to bargain collectively with the Union."

We recognize the duty of the court to support the Board in conflict with a recalcitrant employer; but it does not seem proper to us to go to the length requested in this case. The fundamental purpose of the statute is to protect employees in their right to organize and to bargain collectively. This right depends upon self organization and it is expressly provided that it shall be exercised through representatives selected by the majority of the employees in a unit appropriate for the purpose. See, §§ 1, 7 and 9(a) of the statute, 29 U.S.C.A. §§ 151, 157 and 159(a). It follows that when a union majority has been dissipated without fault on the part of the employer the union no longer possesses the authority to speak for the employees and an order of the Board that requires the employer to bargain with the union cannot be enforced. The order of the Board now under consideration cannot be approved off the ground stated in its opinion, that the order is necessary to effectuate the policy of the Act, for it is clear that the order will defeat the prime purpose of the statute to lodge the bargaining power of the workers in the hands of their chosen representatives. This end cannot be subordinated merely to uphold the power and prestige of the Board.

The unusual situation which confronts us in this case grew out of an order of the Board of May 12, 1944, whereby it certified that the International Brotherhood of Electrical Workers, Local Union No. 1229, had been selected as bargaining representative by a majority of all the technicians employed at the transmitter of Inter-City Advertising Company, Inc., operator of a radio station at Charlotte, N. C. Excluded from the bargaining unit were the employees at the Company's studio, the chief engineer and all other supervisory employees with power to hire and fire. The employer had resisted the classification of its transmitter technicians in a separate

unit, claiming that they should be joined in a single unit with the employees at the studio. This claim was denied and the employer, pointing out that it had no other means under the law to test the reasonableness of the classification, notified the Board on May 15, 1944, that it did not acquiesce in the Board's definition of the bargaining unit. On July 19, 1944, after a request for a conference for the purpose of negotiating an agreement had been made by a union representative, the employer notified the Union that because of the designation of the bargaining unit the Company respectfully declined the request.

Thereupon the Union filed with the Board a charge that the employer had engaged in an unfair labor practice in refusing to bargain with the representatives of the Union; and the Board filed a formal complaint embodying this charge. The complaint also charged that the employer had interfered with and coerced the employees in the exercise of their rights in various other respects, but as shown by the excerpt from the examiner's findings quoted above, no evidence in support of the additional charges was offered and they were dismissed by the Board. The refusal of the Company to bargain, promptly announced by the employer in order to test the reasonableness of the classification of the transmitter technicians in a separate unit, was the employer's sole offense.

We agree with the Board that there was evidence to support the reasonableness of the classification. Transmitter technicians must be licensed by the Federal Communications Commission. Their work requires greater technical skill and training than that possessed by studio control room operators and the two groups work at a distance from one another, the studio being located in the center of the city and the transmitter station seven miles away in the country. These differences furnish substantial basis for the exercise of the power vested in the Board to determine what form of bargaining unit will best serve the policies of the Act. May Dept. Stores Co. v. National Labor Relations Board, 66 S. Ct. 203, decided December 10, 1945; National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170; Pittsburg Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; National Labor Relations Board v. National Broadcasting Co., 2 Cir., 150 F.2d 895.

The finding of the Board that the employer committed an unfair labor practice by refusing to bargain with the Union in July, 1944, was therefore justified; but it is still necessary to examine the facts in order to determine whether the order of the Board issued on May 23, 1945, requiring the employer to bargain with the Union can be sustained in view of the changes in the situation which occurred subsequent to the refusal to bargain in July, 1944. These changes are shown by the following recital of the facts: At the time of the election there were only four employees at the transmitter station of whom three voted for and one against the Union. A change in the employees took place as the result of the decision of a new general manager placed in charge of the radio station on July 1, 1944, who rearranged the working hours of the transmitter operators and directed the chief engineer to take over the early morning shift. This made it necessary to discharge one transmitter operator and the choice was fairly made by selecting a part time employee who had a full time job with another company and could not take on the hours required of him in the new arrangement. Accordingly he was released about July 19, 1944.

Another change took place on or about September 23, 1944, when an operator was transferred from the transmitter station to the control room where, as the trial examiner found, there was need for some one with enough knowledge to handle the facilities properly and to do maintenance work. The employee transferred was a union man and a new employee who did not belong to the Union was hired to fill the place. The result of these changes was that of the three men eligible for union membership remaining at the transmitter station, two were non-union and only one was a union man. These changes were made without consultation with the Union but gave rise to no disputes, were not actuated by hostility to the Union and were not designed to influence and did not influence the employees with respect to union membership. One of the non-union men remaining at the station testified that he understood that the employer was negotiating with the Union and the other testified that he had never been asked to join the Union and did not have any knowledge that the employer had declined to bargain with the Union. Both testified that

their attitude toward the Union was not affected by anything said or done by the employer and that they did not want the Union to represent them. The Board noted in its opinion the contention of the employer that the loss of union majority had not been caused by any unfair labor practice on its part, and approved the quoted conclusion of the trial examiner that no evidence had been adduced to sustain the allegation that the employer had interfered with, restrained or coerced its employees.

It is apparent from this review of the facts that none of the circumstances existed which in other cases have led the courts to compel an employer to bargain with a union alleged to have lost its majority. There was no aggressive campaign against the Union and no intimidation of the workers as existed in Franks Bros. Co. v. Labor Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U. S. 318, 60 S.Ct. 918, 84 L.Ed. 12, 26; and National Labor Relations Board v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380. There was no room for the presumption that the union majority which once existed continued in being or that the decline in union membership was due to the employer's refusal to bargain as was the case in Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 139 F.2d 984 and National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632; or that the loss of majority was due to unfair labor practices as was the case in National Labor Relations Board v. Cowell Portland Cement Co., 9 Cir., 148 F.2d 237, 242; National Labor Relations Board v. George P. Pilling & Son Co., 3 Cir., 119 F.2d 32; and National Labor Relations Board v. Chicago Apparatus Co., 7 Cir., 116 F.2d 753; and there was no ground for applying the rule that a certification of bargaining representatives must be maintained for a reasonable time on the ground that it would be impracticable to hold frequent elections upon every shift of sentiment of the employees as in National Labor Relations Board v. Appalachian Electric Power Co., 4 Cir., 140 F.2d 217 and National Labor Relations Board v. Century Oxford Mfg. Corp., 2 Cir., 140 F.2d 541. On the contrary, the evidence in the pending case demonstrated as clearly as if an election had been held that only one union member remained at the transmitter station, and all the facts were so fully shown that no room was left for inference or speculation. The Board itself has re-examined the situation and has found in effect that the Union no longer represents the men.

It has been suggested that it was improper for the employer to change the personnel and working conditions at the transmitter station without consultation with the Union, and therefore the employer is to blame for the Union's loss of majority. We do not think that this contention is tenable. The changes might indeed have become the subject of collective bargaining but it cannot be said that an employer may not make any valid change in the working conditions or personnel of his employees without consulting the union selected by its employees to represent them. In this instance the changes were made in the normal course of business, gave rise to no dispute between the management and the men, and provoked no adverse criticism from the Board. Indeed the Board expressly found that the Company had not interfered with or coerced its employees by discussing and settling grievances with them without participation of the Union, or by refusing to discuss grievances with the Union as the exclusive representative of the men. This holding distinguishes the case from such decisions as Medo Photo Supply Corp. v. Labor Board, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007; Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 127 F.2d 180; National Labor Relations Board v. George P. Pilling Co., 3 Cir., 119 F.2d 32, 38; Oughton v. National Labor Relations Board, 3 Cir., 118 F.2d 486, 498.

The petition of the Board for the enforcement of its order must be denied.

DOBIE, Circuit Judge (dissenting).

I regret that I feel compelled to dissent from the majority and to state briefly the reasons which prompt this dissent.

The respondent argues that, even if the Board's certification be valid and some punishment or disciplinary corrective must be visited upon respondent, the Board should not compel respondent to bargain collectively with the Union which clearly does not represent a majority of the present members of the unit. That, we are told, is penalizing Peter for the transgressions of Paul; it requires respondent (so it claims) to repeat its offense by compel-

ling respondent, against the clearly expressed will of the majority of those now constituting the . unit, to deal with the minority group, thereby thwarting the primary purpose of the Act which is to effectuate the free and untrammelled choice by employees whether or not they will be represented in collective bargaining by a particular group. Hamilton-Brown Shoe Co. v. National Labor Relations Board, 8 Cir., 104 F.2d 49, 55.

Again respondent urges that the instant case bears a striking and important difference from Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; National Labor Relations Board v. Appalachian Electric Co., 4 Cir., 140 F.2d 217; Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 139 F.2d 984. In these cases it was pointed out that there was proper room for the presumption that the present opposition of the employees to the Union, and the probable or possible loss of Union majority, was due, to an appreciable extent at least, to the past unfair labor practices of the employer. In our case, the positive testimony of all the employees opposed to the Union is unequivocally clear and absolutely negatives any such presumption. Further, this testimony was not rebutted, it was not shaken on cross-examination, and the Board did not attack the credibility of the witnesses so testifying. The point is interesting and not altogether free of doubt.

A bit of analysis and recapitulation would seem helpful. When respondent first refused to comply with the Board's order, its refusal was based solely on a single defense which we have held to be untenable— that the Board's designation of the appropriate bargaining unit was arbitrary and invalid. At this stage of the game, had the case ended here, clearly the Board was entitled to the enforcement of its order.

Then, what happens? Respondent puts into effect, unilaterally and utterly without consultation with the designated Union, several changes in the working conditions of the employees within the certified unit, whereby the Union majority was lost. Does this strengthen the position of respondent? I hardly think so, whether this further defiance of the Board's order be regarded as in itself a substantive unfair labor practice, an operative fact, or whether it be deemed a mere evidential fact tending to prove more clearly the refusal of respondent to bargain collectively. See, May Department Stores Co. v. National Labor Relations Board, 66 S.Ct. 203; Medo Photo Supply Corporation v. National Labor Relations Board, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007; Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 127 F.2d 180, 186, certiorari denied 317 U.S. 652, 63 S.Ct. 48, 87 L.Ed. 524.

The form of the Board's order here adopts the rather standard form of relief upon a finding of unjustified refusal of the employer to bargain collectively. National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 432, 61 S.Ct. 693, 85 L.Ed. 930. Some measure of discretion must be permitted to the Board in determining which type of order will best effectuate the policies of the Act. Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; National Labor Relations Board, v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 139 F.2d 984, certiorari denied 322 U.S. 729, 64 S.Ct. 944, 88 L.Ed. 1564. And this principle has been applied even when the unlawful refusal to bargain has not caused the loss of the union majority. See cases cited just above and see, also, National Labor Relations Board v. Porcelain Steels, 6 Cir., 138 F.2d 840; National Labor Relations Board v. Brown Paper Mill Co., 5 Cir., 108 F.2d 867, 872, certiorari denied 310 U.S. 651, 60 S.Ct. 1104, 84 L.Ed. 1416. Then, too, the Courts have insisted that a shift in union preference should not be permitted to defeat the validity of a certification by the Board until the lapse of a reasonable time during which the duly certified agent is allowed to represent those employees included within the certified unit. As was said by Mr. Justice Black in Franks Bros. Co. v. National Labor Relations Board, 321 U. S. 702, 705, 64 S.Ct. 817, 819, 88 L.Ed. 1020: "But, as the remedy here in question recognizes, a bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed." See, also, Motor Valve & Mfg. Co. v. National Labor Relations Board, 6 Cir., 149 F.2d 247; National Labor Relations Board v. Century Oxford Mfg. Co., 2 Cir., 140 F.2d 541, certiorari denied 323 U.S. 714, 65 S.Ct. 40. This principle gains added

strength when, as here, the opposition to the union is expressed after the employer's wrongful refusal to bargain collectively with the certified unit. Nor is the principle entirely based on the argument ab inconvenienti; for, in the very small group involved in the instant case, the time, expense and inconvenience of frequent elections would be of no great consequence.

In the light of all this, I think the petition of the Board for the enforcement of its order against the respondent should be granted, even though the final result may seem somewhat anomalous or unusual.