## NATIONAL LABOR RELATIONS BOARD v. HARRIS-WOODSON CO., Inc.

### No. 5585.

Circuit Court of Appeals, Fourth Circuit.

May 31, 1947.

---

[1] In accord Walling v. McCracken County Peach Growers Ass'n, D.C., 50 F.Supp. 900; contra Fleming v. Arsenal Bldg. Corp., D.C., 38 F.Supp. 207, reversed on other grounds 2 Cir., 125 F.2d 278.

98

Sidney J. Barban, of Baltimore, Md. (Gerhard P. Van Arkel, Morris P. Glushien, A. Norman Somers, Owsley Vose and Bernard Dunau, all of Washington, D. C., on the brief), for petitioner.

Karl M. Dollak, of Washington, D. C., (William F. Howe and Gall & Lane, all of Washington, D. C., on the brief), for respondent.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board. The respondent, hereafter refered to as the Company, is engaged in the manufacture, sale and distribution of candy and related products at Lynchburg, Virginia. It has approximately 40 to 43 employees, who in August 1942 organized for the purpose of collective bargaining as a local union of the CIO. The Board found the Company had violated sections 8(1), (3), and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158 (1, 3, 5), by refusing to bargain with the union, by interfering with, restraining and coercing its employees in the exercise of rights guaranteed by the Act and by the discriminatory discharge of one Edna B. Elder, the president of the union. The Board's order requires the company to cease and desist from unfair labor practices, to

offer Edna B. Elder reinstatement with back pay, to bargain with the union upon request and to post appropriate notices. The only questions before us relate to the sufficiency of the evidence to support the findings. It is not necessary to review the evidence in detail, as we think that under the applicable rules of law there can be no real question as to its sufficiency.

As to the refusal to bargain, the company admits that since September 1, 1943, it has refused to bargain with the union, and the record amply supports the finding of the Board that the refusal was not justified. The facts are that following the organization of the union in August 1942, it was unanimously chosen as the bargaining representative of the employees at an election held shortly thereafter. The company recognized it as bargaining representative, but upon the failure of negotiations a strike was called which lasted for several weeks. The strike was settled by the negotiation of a trade agreement which was to be operative until October 1, 1943, and which fixed wages until that date but reserved certain questions including the check off and the closed shop for further negotiation. These were taken up in June, July and August, without any agreement being reached, and at the August meeting it was agreed that further negotiations would be suspended until a meeting in September, when a new contract would be discussed. No further meetings were ever held, however, because, beginning September 1st, the Company expressed doubt that the union represented a majority of its employees, addressed communications to the employees stating that they need not join a union and would save money by not paying union dues and notified the union that it would not be further recognized as bargaining agent for the employees unless so designated in a new election to be held by the Labor Board. No such election was held and the company has since refused to recognize the union as bargaining agent.

█ The evidence sustains the finding of the Board that the union had not lost its majority representation when the company refused to bargain with it in September 1943. The records of the union show that during August 1943 it had 27 paid up members, in September 38 members, and in October 37 members. The president of the company had the foreman make inquiry of the employees and only eight or ten were reported as having indicated a preference to deal directly with the company. No rival union was claiming to represent the employees, and the record sustains the view that the president of the company was merely seeking another election in the hope that he might be able to persuade a majority of the employees to repudiate the bargaining agent which they had elected, and which had been certified as such by the Board. It is not without significance that he refused to agree to an election to be conducted by representative persons in the community such as members of the faculty of the local college, any minister of the Gospel or the judge of any court of record. The refusal to bargain continued until complaint was filed with the Board in the spring of 1945, and there is nothing to show that in the meantime the union did not represent a majority of the employees. On the contrary, there is evidence that its majority status continued.

█ It was for the Board, not the company, to determine the bargaining agent and to decide when another election was necessary for that purpose. The presumption is that the majority status of a designated bargaining agent continues until the contrary is shown and, even if there has been a loss of majority, the order to bargain may be an appropriate means of removing the effects of the unfair labor practice of refusal to bargain which has resulted in such loss. The rule applicable was stated by this Court in N.L.R.B. v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 640, as follows: "Respondent is not faced with conflicting claims as to representation, but raises the question as to the authority of the union to represent its employees as a means of escaping any obligation to bargain at all. In such case it is reasonable to presume that the authority of the bargaining agent continues until the contrary be shown. See National Labor Relations Board v. Remington-Rand, 2 Cir., 94 F.2d 862, 870; National Labor Relations Board v. Biles-Coleman Lumber Co., 9 Cir., 96 F.2d 197, 198; National Labor Relations Board v. Louisville Refining Co., 6 Cir., 102

F.2d 678. \* \* \* It is reasonable to assume, moreover, that any decline in union membership has been due in large measure to refusal of respondent to bargain with the union as representative of the employees in the manner contemplated by the Act of Congress; and, in such situation, an order requiring respondent to bargain as contemplated by the Act is reasonably necessary to overcome the effect of the interference with self organization resulting from the refusal to bargain. An employer should not be allowed to discredit a bargaining agent selected by an overwhelming majority of his employees by refusal to bargain with it and then take advantage of the loss of membership due to his wrongful act as an excuse for refusing to recognize it as a bargaining agent. It must be remembered that the union represents the employees, not the employer; and, if a majority of the employees are not satisfied to be represented by it, they can apply to the Board for relief." See also Great Southern Trucking Co. v. N.L.R.B., 4 Cir., 139 F.2d 984, 986; N.L.R.B. v. Bradford Dyeing Ass'n., 310 U.S. 318, 340, 60 S.Ct. 918, 84 L.Ed. 1226; N.L.R.B. v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380.

What was said by the Supreme Court in the case last cited is clearly applicable here, viz.: "On the Board's petition for enforcement the court below sustained the Board's finding, but expressing the belief that because of lapse of time and changed conditions the Local might no longer represent the majority of employees, modified the Board's order so as to require it to conduct an election to determine whether the Local had lost its majority due to a shift of employees to a rival independent association. The Board had considered the effect of a possible shift in membership, alleged to have occurred subsequent to Lorillard's unfair labor practice. But it had reached the conclusion that in order to effectuate the policies of the Act, Lorillard must remedy the effect of its prior unlawful refusal to bargain by bargaining with the union shown to have had a majority on the date of Lorillard's refusal to bargain. This was for the Board to determine, and the court below was in error in modifying the Board's order in this respect."

■ The company makes much of the fact that a representative of the union agreed with the company's president in the spring of 1945 to have an election held by the Board but, after petitioning for such election, withdrew the petition and filed the complaint on which these proceedings were based. While the repudiation of the agreement by the representative of the union cannot be approved, his agreement was in no way binding on the Board; and it is the action of the Board, not that of the union representative, which is before us for review.

■■ As to the Board's finding of interference, there is abundant evidence of the questioning of employees as to membership in the union and of anti-union expressions by the company's superintendent made in such way as to discourage union membership. The rule with respect thereto is well settled and was stated by us recently in the case of N.L.R.B. v. Norfolk-Southern Bus Corporation 159 F.2d 516, 518, where we said: "Questioning of employees concerning union membership and activities and disparaging remarks by supervisory employees made in such way as to hamper the exercise of free choice on the part of the employees, have been uniformly condemned as violation of the Act. H. J. Heinz Co. v. N.L.R.B., 311 U.S. 514, 518, 519, 61 S.Ct. 320, 85 L.Ed. 309; Virginia Electric & Power Co. v. N.L.R.B., 4 Cir., 132 F.2d 390, 392–395; N.L.R.B. v. Baltimore Transit Co., 4 Cir., 140 F.2d 51, 56; Piedmont Shirt Co. v. N.L.R.B., 4 Cir., 138 F.2d 738."

■ As to the discharge of Edna B. Elder, the president of the union, it appears that she was discharged in the spring of 1945 at the time when question of union representation was again becoming acute. The company contends that the ground of the discharge was insubordinate language and conduct, and evidence of a controversy between the employee and the superintendent of the company was introduced. The Board took the view, however, that this was not the true reason for the discharge, but only a pretext. It was shown that Mrs. Elder was a competent and efficient employee with a long record of faithful service, and that controversies and even quarrels

between the employees and the superintendent had not theretofore led to discharge. According to Mrs. Elder's testimony, which was accepted by the Board, the controversy was of a very minor character and furnished no sufficient justification for the peremptory discharge of an efficient employee with a long record of service. Under such circumstances, the Board may very well have concluded that the true reason for the discharge was other than the one given, and was to be found in the position which Mrs. Elder held in the union and her activity in its behalf. This is all the more reasonable in view of the manifest anti-union bias of the company's officers and superintendent and of the controversy with regard to the recognition of the union which had just been revived. That Mrs. Elder's union affiliation banked large in the mind of the president of the company in connection with her discharge appears from the fact that, in refusing her reinstatement, he referred to her having taken the matter up through the union instead of directly with the officers of the company.

The question as to the real reason for the discharge was one for the Board; and, in the light of all the evidence, we cannot say that the Board's action was without substantial support. As we said in Hartsell Mills Co. v. N.L.R.B., 4 Cir., 111 F.2d 291, 293, "It must be remembered, in this connection, that the question involved is a pure question of fact; that, in passing upon it, the Board may give consideration to circumstantial evidence as well as to that which is direct; that direct evidence of a purpose to violate the statute is rarely obtainable; and that where the finding of the Board is supported by circumstances from which the conclusion of discriminatory discharge may legitimately be drawn, it is binding upon the courts, as they are without power to find facts or to substitute their judgment for that of the Board." See also N.L.R.B. v. J. Freezer & Son, 4 Cir., 95 F.2d 840, 841; N.L.R.B. v. Wallace Mfg. Co., 4 Cir., 95 F.2d 818, 820.

For the reasons stated, the order of the Board will be enforced.

Order enforced.