## NATIONAL LABOR RELATIONS BOARD v. NORFOLK SHIPBUILDING & DRY-DOCK CORPORATION.

### No. 5826.

United States Court of Appeals
Fourth Circuit.

Jan. 26, 1949.

Owsley Vose, Attorney, National Labor Relations Board, of Washington, D. C. (David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, and Frederick U. Reel, Attorney, National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Leon T. Seawell, of Norfolk, Va., for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board and presents another chapter in the labor controversies of the Norfolk Shipbuilding and Drydock Corporation which on two prior occasions have engaged the attention of this Court. See N. L. R. B. v. Norfolk Shipbuilding and Drydock Corporation, 4 Cir., 109 F.2d 128, and Employees Protective Ass'n v. N. L. R. B., 4 Cir., 147 F.2d 684. The order of which enforcement is here sought was entered by the Board on August 26, 1946. It finds the employer guilty of unfair labor practices in interfering with the formation and administration of an employees' association, in discharging ten employees, and in refusing to

bargain with the C.I.O. union. It requires the employer to cease and desist from the unfair labor practices found, to offer reinstatement with back pay to the ten employees and upon request to bargain collectively with the union.

The order is attacked as lacking substantial support in the evidence; but we think that it is amply supported. Nothing would be gained by going again over the evidence, which is carefully summarized in the intermediate report of the trial examiner which was approved, with certain exceptions, by the Board. That it is sufficient to establish interference with the employees' right of self organization as found by the Board, see N. L. R. B. v. Norfolk Shipbuilding & Drydock Corporation, supra, 4 Cir., 109 F.2d 128, 129; Wallace Corporation v. N. L. R. B., 4 Cir., 141 F.2d 87, 90; N. L. R. B. v. Virginia Electric and Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348; Id., 4 Cir., 132 F.2d 390; N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 599, 61 S.Ct. 358, 85 L.Ed. 368.

While the company contends that the discharges of the ten employees were upon adequate grounds, there was ample evidence to support the findings that they arose out of hostility to the union. It was for the Board to weigh the evidence and find the facts established by it; and we cannot say that its findings lacked substantial support. N. L. R. B. v. Nebel Knitting Co., 4 Cir., 103 F.2d 594; Hartsell Mills Co. v. N. L. R. B., 4 Cir., 111 F.2d 291, 292-293. As said in the case last cited:

"It must be remembered, in this connection, that the question involved is a pure question of fact; that, in passing upon it, the Board may give consideration to circumstantial evidence as well as to that which is direct; that direct evidence of a purpose to violate the statute is rarely obtainable; and that where the finding of the Board is supported by circumstances from which the conclusion of discriminatory discharge may legitimately be drawn, it is binding upon the courts, as they are without power to find facts or to substitute their judgment for that of the Board."

There was ample evidence, also, to support the finding that the company refused to bargain with the union as contemplated by law after it had been certified by the Board as bargaining agent. The principles here applicable were laid down by this Court in Great Southern Trucking Co. v. N. L. R. B., 4 Cir., 127 F.2d 180, 185, and N. L. R. B. v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 637, 638.

The company has moved to dismiss the petition of the Board on the ground that the latter was guilty of inexcusable laches in delaying from August 26, 1946, the date of the entry of its order, until November 2, 1948, a period of more than two years, to ask for enforcement, although the Board was promptly notified that the company would not accept or abide by the order. The answer of the Board to this is that there is no limitation in the statute and that, if the company felt aggrieved by the delay, it had a full and complete remedy in the right to petition for a review of the order under section 10(f) of the Act, 29 U.S.C.A. § 160(f), relying upon N. L. R. B. v. Nebel Knitting Co., 4 Cir., 103 F. 2d 594, 595; N. L. R. B. v. Aluminum Products Co., 7 Cir., 120 F.2d 567, 573; N. L. R. B. v. Suburban Lumber Co., 3 Cir., 121 F.2d 829, 833; N. L. R. B. v. Isthmian Steamship Co., 2 Cir., 126 F.2d 598, 600, 601; N. L. R. B. v. Central Dispensary & Emergency Hospital, 79 U.S.App. D.C. 274, 145 F.2d 852, 854; N. L. R. B. v. Sun Tent-Luebbert Co., 9 Cir., 151 F.2d 483, 488. We do not think, however, that this is a complete answer. The Board is invoking the injunctive power of equity carrying with it the power to punish for contempt; and this ought not be exercised except in accordance with equitable principles. Hecht Co. v. Bowles 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754. It is manifest that it should not be exercised when there has been such delay in applying for enforcement that the Board's order probably will not do justice at the time enforcement is applied for. In no realm of litigation is promptness of action more important than in that of labor relationships, where the conditions upon which an order of the Board is based may change very quickly; and, in recognition of this, Congress has expressly provided that petitions filed under the National Labor Relations

Act or the Labor Management Relations Act "shall be heard expeditiously, and if possible within ten days after they have been docketed". 29 U.S.C.A. § 160(i), Laws 80th Cong., 1st Sess., Ch. 120, P.L. 101, sec. 10(i). A delay of more than two years in applying for the enforcement of an order might well be sufficient ground for denying enforcement, unless it appears, as we think it does here, that the order is appropriate for present enforcement and that no substantial harm has resulted from the delay.

■ In so far as the cease and desist provisions of the order are concerned, it is certainly appropriate to restrain the company now from discouraging membership in the C.I.O. union, from recognizing or dealing with the employees Association unless and until it is certified as a bargaining agent by the Board, and from interfering in any way with the right of self organization on the part of its employees. We think also that it is appropriate to restrain the company now from refusing to bargain collectively with the union as the certified representative of its employees and to direct that it so bargain until another bargaining agent shall have been certified. The company says that there has been a great change in the personnel of its employees since the order was entered and that there is no certainty that the union now represents a majority. The answer to this, however, is that the company has never complied with the order to bargain and any loss of majority may be attributed to that fact. We dealt fully with the question thus presented in Great Southern Trucking Co. v. N. L. R. B., 4 Cir., 139 F.2d 984; N. L. R. B. v. Appalachian Electric Power Co., 4 Cir., 140 F.2d 217; and N. L. R. B. v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 640. In the case last cited, where the question arose upon a motion to remand the case to the Board for further findings because of lapse of time and alleged loss of majority, we said:

"Respondent is not faced with conflicting claims as to representation, but raises the question as to the authority of the union to represent its employees as a means of escaping any obligation to bargain at all.

In such case it is reasonable to presume that the authority of the bargaining agent continues until the contrary be shown. See National Labor Relations Board v. Remington-Rand, 2 Cir., 94 F.2d 862, 870; National Labor Relations Board v. Biles-Coleman Lumber Co., 9 Cir., 96 F.2d 197, 198; National Labor Relations Board v. Louisville Refining Co., 6 Cir., 102 F.2d 678. * * *

"It is reasonable to assume, moreover that any decline in union membership has been due in large measure to refusal of respondent to bargain with the union as representative of the employees in the manner contemplated by the Act of Congress; and, in such situation, an order requiring respondent to bargain as contemplated by the Act is reasonably necessary to overcome the effect of the interference with self organization resulting from the refusal to bargain. An employer should not be allowed to discredit a bargaining agent selected by an overwhelming majority of his employees by refusal to bargain with it and then take advantage of the loss of membership due to his wrongful act as an excuse for refusing to recognize it as a bargaining agent. It must be remembered that the union represents the employees, not the employer; and, if a majority of the employees are not satisfied to be represented by it, they can apply to the Board for relief."

■ In so far as the orders for reinstatement and award of back pay are concerned, these are no more than interlocutory orders requiring specific findings by the Board as to each of the employees concerned. Wallace Corporation v. N. L. R. B., 4 Cir., 159 F.2d 952, 954; Home Beneficial Ins. Co., Inc., v. N. L. R. B., 4 Cir., 172 F.2d 62. In making these findings the Board will, of course, not order an employee reinstated to a position no longer existent, nor will it order payment of back pay for any longer period than reasonably necessary to compensate the employee for the loss which he has actually sustained. In view of the labor shortage which has existed and the ease with which remunerative employment might be found, there is no reason to apprehend that the awards of

back pay will be large or that they will cover an extended period of time. If the company feels itself aggrieved when they are made, it may then petition this Court to review them.

For the reasons stated, the order of the Board will be enforced.