## NATIONAL LABOR RELATIONS BOARD v. NATIONAL PLASTIC PRODUCTS CO.

### No. 5868.

United States Court of Appeals Fourth Circuit.

Argued April 6, 1949.

Decided June 1, 1949.

Rehearing Denied July 5, 1949.

Frederick U. Reel, Attorney, National Labor Relations Board, Washington, D. C. (David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, and Thomas F. Maher, Attorney, National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Jacob Blum, Baltimore, Md. (Jacob S. New and Sidney Blum, Baltimore, Md., on the brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board which directed the National Plastic Products Company to bargain with the International Chemical Workers Union and to cease and desist from interfering with its employees in their efforts at self organization. The company admits the refusal to bargain but contends that the union was not properly certified as a bargaining representative and has now lost majority status. It denies that it has been guilty of the interference found by the Board.

There is no question but that the union was certified by the Board as the bargaining agent of the company's employees on July 26, 1946, on a petition filed on March 29, 1946 and after an election had been held on April 18, 1946, at which a majority of the votes cast were admittedly in favor of the union. The company contends, however, that the certification was invalid (1) because the election was held in advance of a hearing on the petition, (2) because eligibility to vote was based upon the payroll of April 2, after the Board had been notified that some of the employees were to be discharged, and (3) because the Board officials who conducted the election rode out to the company's plant in an automobile with the union representative.

The facts with respect to these contentions are that after the petition for certification was filed with the Board, the Regional Director ordered an election in advance of the hearing, but only after he had determined that there were no issues under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. requiring determination. The company's representative attempted to delay the election until after the hearing by suggesting that the C. I. O. desired to be on the ballot; but the Regional Director called the C. I. O. representative over the telephone and ascertained that the C. I. O. had no such desire.

The company's representative objected to the April 2 payroll as the basis of voting but refused to name the payroll of any other date as satisfactory, and the Board selected that in accordance with its custom to use the payroll immediately preceding the direction of the election. There were 227 employees eligible to vote in the election and 206 votes were cast, of which 17 were challenged on the ground that they were cast by employees whom the company had already determined to discharge because of the completion of the project in which they were engaged. The Board sustained the right of these 17 employees to vote, however, and, when their ballots were counted, 108 votes had been cast for and 98 against the union. With their ballots excluded 95 votes had been cast for and 94 against the union, which had thus received a majority of the votes cast in any event.

When the officials of the Board who conducted the election went to the company's plant fifteen miles from Baltimore, they traveled to Odenton railway station on the train and rode from the station to

the plant in an automobile with the union's representative; but there was no evidence that any employee saw or was in any way influenced by this occurrence, and the Board, while expressing its disapproval, did not think the matter of sufficient importance to justify a denial of certification.

■■ On these facts, it seems perfectly clear that we would not be justified in setting aside the Board's certification. The determination of bargaining representatives under the act is a matter that Congress has entrusted to the Board, not to the courts; [1] and when, as here, a certification is called in question in connection with a petition to enforce or review an order of the Board under section 10, 29 U.S.C.A. § 160, the certification must be sustained in so far as fact questions are concerned, if the fact findings of the Board made in connection therewith are based upon substantial evidence. In so far as the certification involves the exercise of discretion, that is a matter with which we are powerless to interfere so long as the Board acts within the limits of the law. The rule applicable was tersely and correctly stated by Judge Sibley, speaking for the Court of Appeals of the Fifth Circuit in N.L.R.B. v. Whittier Mills Co., 5 Cir., 111 F.2d 474, 477, as follows: "The decisions in American Federation of Labor v. National Labor Board, [308 U.S. 401], 60 S.Ct. 300, 84 L.Ed. 347, and National Labor Relations Board v. International Brotherhood of Electrical Workers, [308 U.S. 413], 60 S. Ct. 306, 84 L.Ed. 354, denied jurisdiction in the Circuit Courts of Appeal to review such certificates before an order under Section 10, 29 U.S.C.A. § 160, is made against an employer. But Section 9(d) requires that the record touching the certification shall be sent to the court when enforcement or review is sought of an order under Sections 8 and 10 which is based in whole or in part upon the facts certified. This provision, though indicating the certificate is not to be reviewed before an or-

der under Sections 8 and 10 is presented for enforcement or review, clearly means that when an order is presented the record on which the certificate was based may be looked into to determine the lawfulness of the certificate. There can be no other reason for sending up such a record. On reviewing it, we should regard the Board's determination of facts as final, as in reviewing the order based on Sections 8 and 10; and of course in matters which are discretionary, the Board's acts within the limits of law are final. Only where the law has been ignored or violated would the court nullify the certificate of a bargaining representative."

■ There is certainly no basis for overturning the finding of the Board that the union represented a majority of the company's employees. Even if those who were marked for discharge were eliminated, a majority of those participating in the election had voted in favor of the union. The Board was clearly acting within its discretion, under the statute as it stood at that time, in holding the election in advance of the hearing. Art. III, sec. 3, of its regulations so provided; and the decision of the Supreme Court in Inland Empire District Council v. Millis, 325 U.S. 697, 707, 65 S.Ct. 1316, 89 L.Ed. 1877, leaves no doubt as to the propriety of the Board's procedure. As to the other matters complained of, it certainly was for the Board and not the courts to exercise the discretion as to when the election should be held, upon what payroll eligibility to vote should be determined and whether or not the election should be set aside for irregularities in procedure. For the courts to substitute their judgment for that of the Board in such matters would be for them to undertake an impossible task and entirely to misconceive their function under the statute.

■ The company next contends that it is justified in refusing to bargain with the union because of the lapse of time since

[1] N. L. R. B. v. Falk Corporation, 308 U.S. 453, 60 S.Ct. 307, 84 L.Ed. 396; N. L. R. B. v. International Brotherhood of Electrical Workers, 308 U.S. 413, 60 S.Ct. 306; 84 L.Ed. 354; A. F. of L. v. N. L. R. B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; Employees Protective Ass'n v. N. L. R. B., 4 Cir., 147 F.2d 684; Madden v. Brotherhood and Union of Transit Employees, 4 Cir., 147 F.2d 439, 158 A.L.R. 1330.

the election, the turnover in personnel that has occurred and the lack of any evidence showing that the majority status of the union has been preserved. In this connection, the company contends that the number of its employees has increased from 227 to 305 and that of these only 103 were eligible to vote at the time of the election. There is nothing, however, to show that the union does not still have a majority; and it appears that the company has never bargained with it but expressly refused to do so on September 13, 1946, shortly after the certification, and that from that time forward has continuously refused to do so. The case is clearly governed by our decision in N. L. R. B. v. Norfolk Shipbuilding Corporation, 4 Cir., 172 F.2d 813, 816, where we said:

"The company says that there has been a great change in the personnel of its employees since the order was entered and that there is no certainty that the union now represents a majority. The answer to this, however, is that the company has never complied with the order to bargain and any loss of majority may be attributed to that fact. We dealt fully with the question thus presented in Great Southern Trucking Co. v. N. L. R. B., 4 Cir., 139 F.2d 984; N. L. R. B. v. Appalachian Electric Power Co., 4 Cir., 140 F.2d 217; and N. L. R. B. v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 640. In the case last cited, where the question arose upon a motion to remand the case to the Board for further findings because of lapse of time and alleged loss of majority, we said:

" 'Respondent is not faced with conflicting claims as to representation, but raises the question as to the authority of the union to represent its employees as a means of escaping any obligation to bargain at all In such case it is reasonable to presume that the authority of the bargaining agent continues until the contrary be shown. See National Labor Relations Board v. Remington-Rand, 2 Cir., 94 F.2d 862, 870; National Labor Relations Board v. Biles-Coleman Lumber Co., 9 Cir., 96 F.2d 197, 198; National Labor Relations Board v. Louisville Refining Co., 6 Cir., 102 F.2d 678.' "

We dealt with the same question in N. L. R. B. v. Harris-Woodson Co., 4 Cir., 162 F.2d 97, 99, where we said: "It was for the Board, not the company, to determine the bargaining agent and to decide when another election was necessary for that purpose. The presumption is that the majority status of a designated bargaining agent continues until the contrary is shown and, even if there has been a loss of majority, the order to bargain may be an appropriate means of removing the effects of the unfair labor practice of refusal to bargain which has resulted in such loss."

In the case last cited we quoted the following from the opinion of the Supreme Court in N. L. R. B. v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380, which is determinative of the question here, viz.: "On the Board's petition for enforcement the court below sustained the Board's finding, but expressing the belief that because of lapse of time and changed conditions the Local might no longer represent the majority of employees, modified the Board's order so as to require it to conduct an election to determine whether the Local had lost its majority due to a shift of employees to a rival independent association. The Board had considered the effect of a possible shift in membership, alleged to have occurred subsequent to Lorillard's unfair labor practice. But it had reached the conclusion that in order to effectuate the policies of the Act, Lorillard must remedy the effect of its prior unlawful refusal to bargain by bargaining with the union shown to have had a majority on the date of Lorillard's refusal to bargain. This was for the Board to determine, and the court below was in error in modifying the Board's order in this respect."

See also Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 704–706, 64 S.Ct. 817, 88 L.Ed. 1020.

The case here is not one where the employer has complied with the order of the Board to bargain and later desisted because of belief that the majority status of the union no longer existed. Nor is it one where, after having complied with the order, the employer is faced by con-

flicting demands of another union. It is one where the employer has adopted an intransigent attitude and has refused to obey the order of the Board from the beginning, and where it is perfectly clear that it has refused to do so, not because it thinks that the union may not represent a majority of its employees, but because it is opposed to bargaining at all. In this connection, it should be remembered that it is the Board and not the employer that is designated by the statute to determine the bargaining representative for the employees, and that, if the employees are not satisfied to be represented by the union which the Board has designated to represent them, they can apply to it for relief. See Franks Bros. Co. v. N. L. R. B. supra.

 The company's final contention is that relief should be denied because of de-. lay by the Board in seeking relief and pressing its complaint to hearing; but the contention here is completely answered by what we had to say in our recent decisions in N. L. R. B. v. Norfolk Shipbuilding and Drydock Co., supra, 4 Cir., 172 F.2d 813, and N. L. R. B. v. Emery, 4 Cir., 173 F.2d 349. The delay here was not as great as in those cases, and while, as there pointed out, the injunctive power of the court should not be exercised where there has been such delay that the Board's order will not do justice, there is nothing in the record here to indicate that justice will not be done in requiring the company to comply with the order to bargain, which it should have complied with when entered. The situation is fully covered by the cases from which we have quoted at length above.

 Little need be said as to that portion of the case relating to interference with employees in the exercise of their right of organization. The Board found that the company's chief engineer had interrogated two employees as to their union membership before agreeing to employ them and that its night superintendent had interrogated a woman employee as to her brother's union affiliation and as to her own attendance at union meetings. Upon these incidents the Board based a finding that the employer had interfered with the employees in the exercise of their right of organization. It found, also, that the president of the company in an address to the employees on the day preceding the election had stated that it would have given the employees a raise in wages but for the fact that it could not do so under the law while an organizational campaign was in progress. While we attach no importance to the speech of the president and do not think that it can properly be construed as either a threat or an inducement, the questioning of employees as to union membership is sufficient to sustain the provision of the order directed against interference. N. L. R. B. v. Harris-Woodson Co., supra, 4 Cir., 162 F.2d 97, 100; N.L.R.B. v. Norfolk Southern Bus Corporation, 4 Cir., 159 F.2d 516, 518, and cases there cited.

For the reasons stated, the order of the Board will be enforced.

Order enforced.

## On Petition for Rehearing.

PER CURIAM.

 A petition is filed asking that this case be reheard in the light of the recent decision of the Supreme Court in N. L. R. B. v. Pittsburgh Steamship Co., 69 S.Ct. 1283. There is no occasion for such rehearing. So far as the scope of review is concerned, this court has considered itself bound by the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., and the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq., since the passage of those statutes and has recently discussed the matter in Eastern Coal Corp. v. N. L. R. B., 4 Cir., 176 F.2d 131. So far as the discretion of the Board in permitting a pre-hearing election is concerned, the election was held before the Wagner Act was amended by the Taft-Hartley Act, 29 U.S.C.A. §§ 141 et seq., 151 et seq., and the provisions of the former act, not the latter, were clearly applicable to it. The petition for rehearing is without merit and will be

Denied.